No. 20-2051

_____

UNITED STATES COURT OF APPEALS

FOR THE SEVENTH CIRCUIT

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

vs.

TIMOTHY BRANDON FREDRICKSON,

Defendant, Appellant.

_____

Appeal from the United States District Court

for the Central District of Illinois, Rock Island, Illinois

Case No. 17-cr-40032

The Honorable Judge Michael M. Mihm

_____

BRIEF AND REQUIRED SHORT APPENDIX OF

DEFENDANT-APPELLANT, TIMOTHY FREDRICKSON

_____

Murray W. Bell, P.C.

2435 Kimberly Road

Bettendorf, Iowa 52722

563-326-4095

fax 563-594-5180

mwbell@kirkwoodlaw.com

**ORAL ARGUMENT REQUESTED**

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 20-2051

Short Caption: United States v. Timothy Brandon Fredrickson

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Timonthy Brandon Fredrickson

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Murray W. Bell, P.C.

Donovan S. Roberson and  Coyle Stengel Bailey & Robertson,

(3)    If the party, amicus or intervenor is a corporation:

   i)     Identify all its parent corporations, if any; and

         N/A

   ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

         N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

   N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

   N/A

Attorney's Signature: /s/  Murray W. Bell                          Date: 09-11-2020

Attorney's Printed Name:  Murray W. Bell

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☑    No ☐

Address: 2435 Kimberly Road, Suite 235 South,

         Bettendorf, IA 52722

Phone Number: 563-326-4095                          Fax Number:  563-594-5180

E-Mail Address: mwbell@kirkwoodlaw.com

rev. 12/19 AK

# TABLE OF CONTENTS

CIRCUIT RULE 26.1 DISCLOSURE STATEMENT ……………………......ii

TABLE OF AUTHORITIES ……………………………………………….........iv

JURISDICTIONAL STATEMENT ……………………………………….......1

ISSUE PRESENTED FOR REVIEW ……………………………….............2

STATEMENT OF THE CASE ……………………………………… 3

    **Statement of the Facts** …………………………………… ….................3

    **Proceedings and Ruling** ………………………………………….......5

SUMMARY OF ARGUMENT …………………………………….......................10

ARGUMENT ……………………………………………….. …………….........11

    **Standard of Review** …………………………………………….......11

    **The Merits** …………………………………………………….........12

    **Constitutional Caselaw** ……….......…………………………….....12

    **The Scope of Protected Speech** ….......……………………….....20

    **Analysis** ……………………………….......…………………….........25

    **Market Deterrence** ……….......……………………………….......27

    **Cost - Benefit Analysis** ……….......……………………….......28

**CONCLUSION** …………………………………………………...............30

**CERTIFICATE OF COMPLIANCE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. Free Speech Coalition* 535 US 234, 122 S Ct 1389 (2002). 12, 15, 16, 22, 25, 32, 27-28, 30

*Free Speech Coalition v. Reno,* 198 F.3d 1083 (9th Cir. 1999) ……………….... 26

*New York v. Ferber,* 458 U.S. 747, 102 S.Ct. 3348 (1982)  ….13, 14,18, 21, 22, 23

*People v. Hollins,* 971 NE 2d 504 (IL 2012)  ………………………………16,17, 24, 25

*People v. Reising,* 2019 WL 5457865 (IL App., unpublished)  ………………… 18

*U.S. v. Playboy Entertainment Group, Inc.* 529 US 803 120 S Ct 1878 (2000).. .11

*U.S. v. Stevens,* 559 US 460, 130 S.Ct. 1577 (2010) ………....11, 15, 16, 21, 28-29

*US v. Williams*, 553 US 285, 128 S.Ct. 1830 (2008) …………………………….26

## Federal Statutes

18 USC 2243(a)  …………………………………………………….......23

18 USC 2251(a)  …………………………………………………...5-6

18 USC 2254(1)(2B) and (8)...................................................................23

18 USC 2256(1)  …………………………………………………...6, 23

18 USC 2256(2)(A)  ………………………………………………… 3, 6

## Congressional Report

Congressional Findings of 1996 for the CPPA  …………………………….. 26

   Subsection 11(A) …………………………………………….......26-27

   Subsection 11(B) …………………………………………….....27-28

## United States Constitution

First Amendment …………………………………………………....12, 15

## State Codes

720 ILCS 5/11- 1.60(d), Code of Illinois  ………………………….......18, 20

720 ILCS 5/11-20.1(a)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Section 702.5, Code of Iowa ………………………………………… …........22

Section 709.4, Code of Iowa  ………………………………….......17, 18

Sections 728.1(g) and 728.12, Code of Iowa  ………………….................20

# JURISDICTIONAL STATEMENT

1.   The jurisdiction of the United States District Court for the Central District of Illinois was founded upon 18 USC §3231. A grand jury sitting in the aforementioned district indicted Timothy Fredrickson for Sexual exploitation of a child in violation of 18 USC §§ 2251(a)and (e).

2.   The jurisdiction of the United States Court of appeals for the Seventh Circuit is upon 28 USC § 1291 and 18 USC § 3742, and is based upon the following particulars:

i.   Date of entry sought to be reviewed: Sentence imposed on June 4, 2020; Judgment in a Criminal Case entered on June 5, 2020.

ii.   Filing date of motion for a new trial: n/a

iii.   Disposition of motion and date of entry: n/a

iv.   Filing date of notice of appeal: June 18, 2020.

1

## ISSUE PRESENTED FOR REVIEW

Whether the statute is overbroad in that it provides punishment for constitutionally protected activity in the inducement of consensual production and consensual private transmission of images depicting sexually explicit conduct that is not illegal in itself and is not child pornography.

# STATEMENT OF THE CASE

## *Statement of the Facts*

The investigation leading to the instant charge began when police learned Mr. Fredrickson had received photos and video from a sixteen year-old young woman who lived in Moline, Illinois. The investigation began in February of 2017.  Mr. Fredrickson was twenty-seven years old at that time, and he lived in Davenport, Iowa.  The police discovered twenty-four videos in Defendant's possession wherein the girl had engaged in sexually explicit conduct while alone. The girl had produced the videos for Mr. Frederickson and transmitted them to him via cell phone.  The videos included images of the girl displaying her genitalia and the act of masturbation, both of which are within the definition of "sexually explicit conduct" under 18 USC 2256(2)(A).   A city of Moline police detective described for the jury how Mr. Fredrickson was able to make and keep recordings of the videos the young woman had sent to him.  The videos were transmitted in January and on February 1, 2017. Through the detective, the Government provided extensive testimony describing the video evidence that was recovered from Mr. Fredrickson pursuant to a search warrant.  The prosecutor also placed into evidence the actual videos and still photos taken from the videos.  (Trial Transcript [hereafter "Tr."] pp.  170-178) (Gov't Trial Exhibits 11 to 17A)

3

The defense did not challenge the authenticity of the videos and did not object to their admission into evidence.  On cross-examination of the detective, the defense established there was no evidence Mr. Fredrickson and the complaining witness had ever met in person. The two had first made contact through an application called Whisper.  The Whisper application is an anonymous platform where a participant can keep his or her identity unknown.  The young woman created all of the videos on her own, using her cell phone camera.  Mr. Frederickson did not provide a phone or any other type of equipment to her.  There is no evidence Mr. Fredrickson ever shared any of the images with anyone else. There is no evidence Defendant conveyed any threats to coerce the young woman into producing or sending the videos.  The evidence recovered also included texts and photos exchanged between the two that were not of a sexual nature.  On redirect, the Government pointed out that while Mr. Frederickson did not give any physical items to the young woman, he did provide remote direction in the production of the videos. (Tr. 237-244)

In her testimony, the complaining witness confirmed that she had never met Tim Fredrickson in person.  In addressing Mr. Frederickson's direction in production of the videos, the young woman told the jury she made the videos, "Because Tim asked me to."  She claimed she was " very uncomfortable" because

4

of his age, and he had "convinced" her to produce the videos.  On cross-examination, the young woman admitted Mr. Frederickson disclosed his age to her when they first met online, and that she chatted with him hundreds of times in January of 2017.  He never made any threats of any kind toward her.  She admitted she could have stopped communicating with him at any time.  (Tr. 254-257)

### Proceedings and Ruling

The Indictment was filed in the instant action on March 21, 2017.  In a single count, the Government charged Mr. Fredrickson with Sexual Exploitation of a Child, in violation of  18 USC 2251(a) and (e).  (R. 13)

In pertinent part, the statute states under subsection (a): *"Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct  . . . shall be punished as provided under subsection (e), if such person knows or has reason to know that such visual depiction will be transported or transmitted using any means or facility of interstate or foreign commerce . . . including by computer, or if such visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed."*

Although Section 2251 is entitled Sexual Exploitation of Children, the prohibited conduct set out above refers to a "minor".  Under 18 USC 2256(1), a minor is defined as "any person under the age of eighteen years ."  As stated, the videos included images of the girl displaying her genitalia and the act of masturbation, both of which are within the definition of "sexually explicit conduct" under 18 USC 2256(2)(A).  There was no dispute that the cell phone transmissions of the videos from Illinois to Iowa would qualify as "communication" defined as interstate commerce.  The Honorable Michael M. Mihm would eventually instruct the jury on this definition using the stock instruction. (R. 156, p. 21) Judge Mihm also heard and ruled upon Mr. Fredrickson's Motion to Dismiss on Constitutional Grounds before trial.

The Motion to Dismiss with a supporting memorandum of law was filed January 7, 2020, and the Government's Response was filed January 15. (R. 142 and 146)  Judge Mihm heard oral arguments on the motion in a telephonic hearing on January 17.

In his motion, Defendant stated facts very similar to those set out in the Statement of the Facts set out above.  Among other things, Mr. Fredrickson stated that the discovery documents provided by the Government had shown two undisputed facts:

1)  "In 2017, Defendant had developed a relationship with a sixteen year-old girl.  He is accused of asking the girl to send him photographic and video images that included images of the girl engaging in sexually explicit conduct while alone."

2)  "There is no evidence that either of the two people involved intended to share the images with anyone else."

The Motion to Dismiss asserted the following basic facts and constitutional arguments, and those assertions were supported in the attached memorandum:

1)  "The statute does not prohibit conduct with a "child", but rather conduct with a "minor".  It prohibits the inducement to create images of sexually explicit conduct that the Defendant knows will be transmitted using means of interstate commerce."

2)  "If Mr. Fredrickson and the girl had met in person in either state, it would not have been illegal for Defendant to watch the girl engage in the sexually explicit conduct recorded in the images, or to use his phone or a camera to record her activity."

3)  "Section 2251(a) is overly broad in prohibiting expression and communication of legal sexually explicit conduct.  The statute violates the First Amendment rights of the girl and the Defendant to direct, produce and

7

communicate sexual expressions in photo and videographic forms.  The images do not record sexual abuse, and are not exempted from constitutional protection as child pornography."

4)  "Congress could have easily provided less restrictive alternatives in the legislation by prohibiting the transmission of images of conduct that in itself was a violation of a valid criminal statute." (R. 142)

The gist of the Government's written response rested on two points. The first was that the videos in question were indeed child pornography, and child pornography is not protected by the First Amendment.  Secondly, the prosecutor argued the production of the videos is prohibited by state law in both Illinois and Iowa. (R. 146)   In the telephonic oral arguments, the defense summarized the Supreme Court cases analyzed in the Argument, below, and emphasized that the videotaping of acts that are not illegal in themselves, or not uniformly illegal throughout the United States, is an expression in free speech that is protected by the First Amendment. (Motion Hearing Transcript, [hereafter "Hrg. Tr."], pp. 3-7) The prosecutor argued "that child pornography and child exploitation is prohibited and is not permissible under the First Amendment".   The Government simply stated that "child pornography and sexual exploitation of a child is a carveout"

that is not given First Amendment protection". The prosecutor made no attempt to define child pornography or child sexual exploitation. (Hrg. Tr. 7-8; App. 17-18)

Judge Mihm ruled from the bench and issued no written ruling. Quite simply, the judge ruled, "I believe it's clear there is a carveout for child porography to protect children under the age of 18 . . . and, I -- the motion to dismiss is denied." (Hrg. Tr. 9; App. 19)

The case went to jury trial on January 21, 2020, and the jury returned a guilty verdict on January 22. (Minute Entries) At sentencing on June 5, Judge Mihm sentenced Mr. Fredrickson to 200 months imprisonment. Notice of Appeal was timely filed June 18, 2020. (R. 183 and 188)(App. P.20)

9

## SUMMARY OF ARGUMENT

Because the videos that the complaining witness transmitted to Mr. Fredrickson, at his behest, do not depict any acts of sexual abuse, or any other criminal act, and the videos were not distributed to anyone other than Mr. Frederickson, the videos are a personal expression and communication protected by the First Amendment.  Section 18 USC 2251 is overbroad and unconstitutional in this regard because it imposes punishment against a person who exercises protected speech. The Government's argument that there is a special "carveout" in the Supreme Court caselaw that excludes child pornography from First Amendment protection is misdirected.  Because there is no sexual abuse or other criminal act depicted in the videos, they do not qualify as child pornography. The district court erred by summarily adopting the Government's argument, and the case must be reversed and remanded for dismissal.

# ARGUMENT

**The statute is overbroad, and unconstitutional on its face,  in that it provides punishment for constitutionally protected activity in the inducement of consensual production and consensual private transmission of images depicting sexually explicit conduct that is not illegal in itself and is not child pornography**.

## Standard of Review:

A statute that explicitly prohibits speech in the form of expression on the basis of content is presumptively invalid, and the Government bears the burden of overcoming the presumption. To succeed in a facial attack, the proponent must establish that no circumstances could exist under which the statute would be valid, or prove that the statute lacks a "plainly legitimate sweep".  *U.S. v. Stevens,* 559 US 460, 468, 473, 130 S.Ct. 1577, 1584, 1587 (2010)  A content-based prohibition of speech can only stand if it can withstand strict scrutiny.  "If a statute regulates speech based on its content, it must be narrowly tailored to promote a compelling Government interest.  *Ibid.*  If a less restrictive alternative would serve the Government's purpose, the legislature must use that alternative.  *U.S. v. Playboy Entertainment Group, Inc.*  529 US 803, 813, 120 S Ct 1878, 1886 (2000)  The

11

argument that follows explains the standards the Supreme Court of the United States has used in curbing the infringement of First Amendment rights the Congress has imposed in the Child Pornography Protection Act (CPPA) of 1996 and similar statutes.

## THE MERITS

### *Constitutional Caselaw*

"As a general principle, the First Amendment bars the government from dictating what we see or read or speak or hear. The freedom of speech has its limits; it does not embrace certain categories of speech, including defamation, incitement, obscenity, and pornography produced with real children … While these categories may be prohibited without violating the First Amendment, none of them includes the speech prohibited by the CPPA." *Ashcroft v. Free Speech Coalition,* 535 US 234, 245-246, 122 S.Ct. 1389, 1399 (2002)

The Supreme Court faced an overbreadth question on New York state statutes that prohibited the inducement of a child *under* 16 years of age to participate in a sexual performance.  The definition of sexual performance included a child's act of masturbation in "any play, motion picture, photograph or dance" or "any other visual representation exhibited before an audience."  In addition to production of the performance, the statute also punished distribution of

a visual representation of the performance. The two films in question depicted two young boys masturbating. The defendant was convicted after being arrested upon the sale of the films to an undercover police officer.  He was acquitted on two counts that required the jury to find the content was obscene, but he was convicted on two other counts that did not require a finding of obscene content.  *New York v. Ferber,* 458 U.S. 747, 751-752, 102 S.Ct. 3348, 3351-3352 (1982)

In upholding the validity of the statute, the Court pointed to five policy factors that authorized the state to prohibit child pornography in depictions of sexual conduct that did not rise to the level of obscenity.

**1)** The Court approved the state legislature's rationale for the statute: "[T]here has been a proliferation of exploitation of children as subjects in sexual performances.  The care of children is a sacred trust and should not be abused by those who seek to profit through a commercial network based upon the exploitation of children."

**2)**   "The most expeditious if not the only practical method of law enforcement may be to dry up the market for this material by imposing severe criminal penalties on persons selling, advertising, or otherwise promoting the product."

3)   "*Third.* The advertising and selling of child pornography provide an economic motive for and are thus an integral part of the production of such materials, an activity illegal throughout the Nation."

4)   "*Fourth.* The value of permitting live performances and photographic reproductions of children engaged in lewd sexual conduct is exceedingly modest, if not *de minimis.*"

5)   "When a definable class of material, such as that covered by Section 263.15 bears so heavily and pervasively on the welfare of children engaged in its production, we think the balance of competing interests is clearly struck and that it is permissible to consider these materials as without the protection of the First Amendment." *Ferber,* 458 U.S. at 756-765, 102 S.Ct. at 3354-3358.

The decision in *Ferber* addressed the distribution and sale of child pornography.  The Court determined the content of the images did not have to rise to the level of obscenity to qualify for a permissible prohibition.  The Court approved legislation controlling child pornography, but the Court did not clearly define the content that would be considered as *child* pornography.  Its focus was on the parameters of the state statute that defined a child as a person under 16 years of age.

14

In *Ashcroft v. Free Speech Coalition,* 535 US 234, 573, 122 S Ct 1389, 1398 (2002), Justice Kennedy wrote: "The First Amendment commands, Congress shall make no law ... abridging the freedom of speech.  The government may violate this mandate in many ways … The Constitution gives significant protection from overbroad laws that chill speech within the First Amendment's vast and privileged sphere." The *Free Speech Coalition* case addressed the question of whether production of the video depiction of virtual children engaged in virtual sexually explicit conduct could be punished under the CPPA.  In concluding the CPPA was overly broad in punishing the virtual depictions, the Court concluded the statute could only prohibit production and distribution of images that recorded actual sexual abuse.  535 US at 249, 122 S Ct at 1401.

In *Stevens,* the Court again directly addressed a question of  defining the type of speech content that could be prohibited by a federal statute.  "[A]s a general matter, 'the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content.' " *Stevens,* 559 US at 460,  130 S. Ct at 1584.  The *Stevens* decision made it clear that the exemption to the constitutional protection of free speech that had been established for the broad category of child pornography was rooted in the fact that child sexual abuse was conduct similarly defined as a crime in every state

15

in the union. The Court pointed to the *Free Speech Coalition* decision that concluded there could not be an exemption from free speech protection where no actual crime was depicted in the virtual images. For that reason, visual depictions could only be punished if they were making a record of an actual criminal act of abuse. 559 US at 471, 130 S. Ct. at 1586. The statute analyzed in *Stevens* prohibited dissemination of videos that depicted animal cruelty. The problem is that "animal cruelty" could be characterized by a wide variance in definitions and punishments

nationwide, and in some states there were no animal abuse crimes at all. 559 US at 474-477, 130 S. Ct. at 1587-1590.

The overbreadth of the statute in question is that in the instant case it punished Mr. Frederickson for engaging a minor in conduct that is perfectly legal for her to perform and for him to watch in person. He had no power of authority over her, and she did so voluntarily. There is no evidence the video communications of sexual expression in the instant case were to be shared with anyone but the two people involved. The statute infringes upon their right to express themselves and to communicate with each other.

In *People v. Hollins,* 971 NE 2d 504 (IL 2012), the Illinois Supreme Court faced a very similar situation. In that case, a 31-year-old man legally engaged in

16

consensual intercourse with a seventeen year-old girl.  He legally photographed part of the sex act with his phone.  The state statute was violated after the girl requested that he send her the photos by email.  The conviction was affirmed, but Justice Burke wrote a dissent that carefully analyzed the U.S. Supreme Court's decisions in *Stevens* and *Free Speech Coalition.*  Justice Burke concluded that after *Stevens* there was no First Amendment exemption for some broadly defined concept of child pornography.  "Or to put it another way, for a photograph to be child pornography in the federal constitutional sense, and thus be exempted from first amendment protection, the photograph must be 'an integral part of conduct in violation of a valid criminal statute.'" *Hollins,* 971 NE 2d at 520.  In the instant case,  Congress quite simply could have provided a less restrictive alternative in 18 USC 2251(a) by requiring that the conduct depicted in the statutory prohibition must make a record of an actual criminal act.

Under the law of Illinois and Iowa, as well as federal law, it would not have been illegal in either state at the time in question for the girl and Mr. Frederickson to consensually engage in that sexually explicit conduct of his requesting and viewing her masturbation if they had been together, in person, in either state.  In fact, in Iowa, Mr. Frederickson and the sixteen-year-old girl could lawfully engage in sex acts, including intercourse.  Section 709.4, Code of Iowa (2017).  While the

Illinois Code prohibits sex acts and "sexual conduct" with the sixteen-year-old girl, such prohibited "sexual conduct" requires an intentional or knowing touching or fondling between the complaining witness and the accused.  Watching is not a crime.  *People v. Reising*, 2019 WL 5457865, p. 3 (IL App., unpublished)  (See: Section 709.4, Code of Iowa (2017) and 720 ILCS 5/11- 1.60(d), Code of Illinois)

In the arguments on the motion, defense counsel emphasized that the complaining witness was not engaged in any illegal act in the images that appeared in the videos in question.  Counsel explained that *Ferber, Free Speech Coalition* and *Stevens* held that exclusion from First Amendment protection required that the content of the videos displayed must be illegal acts.  Scenes of a sixteen-year-old girl masturbating do not fit into categories of child pornography defined by *Ferber* and *Free Speech Coalition.*  Additionally, defense counsel pointed out that the *Stevens* decision held a federal statute cannot deny First Amendment protection to the video recording of conduct that is illegal in some states, but not illegal in others. (Hrg Tr. 3-7; App.  )

In response, the Government's argument in the motion hearing presented a simplistic summary of *Ferber* and *Free Speech Coalition.*  The prosecutor argued that those cases provided a "carveout" for child pornography and child sexual exploitation, and that type of speech content could be prohibited by statute.  The

18

Government did not address the defense argument that *Stevens* held the content must depict an illegal act in order for it to escape First Amendment protection, and that masturbation is not an illegal act.    Instead, the prosecutor said *Stevens* did not address child pornography, and "animal cruelty is a completely different topic".  The attempt to distinguish *Free Speech Coalition* was simply a statement that there was no virtual depiction in the instant case.  "In this case we have a real victim.  She is not virtual."  Judge Mihm seized on that superficial factual distinction.  He ruled:  "We're not talking about a virtual situation here, and I  -- the motion to dismiss is denied."  (Hrg. Tr. 7-9; App.   )

In its written response to the motion, the Government had addressed, in a tangential way, the defense assertion that it would have not been illegal for Mr. Fredrickson to ask the young woman to masturbate while he watched in person. The response evaded the question by saying it would be illegal for Tim to make a video recording of the act under the laws of Iowa, Illinois and the federal code. (R. 146, pp. 4-5)  That much is true.  The Illinois statute does prohibit the video recording of a minor under the age of 18 engaging in an act of  masturbation. 720 ILCS 11-20.1(a)(4).   The Iowa code does not specifically prohibit the recording of a minor engaging in masturbation, but does prohibit the recording of a minor engaged in a "prohibited sexual act".  Masturbation is not included in the

19

definition of prohibited acts, but the definition does include: "Nudity of a minor

for the purpose of arousing and satisfying the sexual desires of a person who may

view a depiction of the nude minor." Sections 728.1(g) and 728.12 Testimony

showed that nudity was an important part of the content for Mr. Fredrickson. (Tr.

164) The State's reference to those statutes and the federal statute at issue here,

begs the question. The question is not whether there are statutes that prohibit

video transmissions of minors involved in sexual activity. The question is whether

these statutes violate Mr. Fredrickson's right to free speech in expression and

private communication with a sixteen year-old-girl when there is no evidence of

any intent to distribute the images. The questions of whether the state statutes are

unconstitutional will be questions for those state courts, depending on this Court's

disposition in the instant case.

### *The Scope of Protected Speech*

The *Stevens* decision was critical in reining in the Congress in its attempt to

over-regulate free speech. The case was not a "completely different topic" than

the question that was before the district court. *Stevens* was a landmark opinion in

charting the limits of the Government's reach in punishing speech based upon its

content. As stated, an infringement on speech in freedom of expression on the

20

basis of content is presumptively unconstitutional.   *Stevens,* 559 US at 468, 130

S.Ct. at 1584.  Justice Roberts delivered the opinion of the Court in an 8-1

decision.  The Court held that while the prevention of animal cruelty has long been

a subject of legislation  across the United States, there has always been a wide

range of definitions of conduct applied in different jurisdictions, and in some

jurisdictions there are no animal abuse statutes at all.  Justice Roberts wrote:

"Our decisions in *Ferber* and other cases cannot be taken as establishing a

freewheeling authority to declare new categories of speech outside the scope of

the First Amendment. Maybe there are some categories of speech that have been

historically unprotected, but have not yet been specifically identified or discussed

as such in our case law. But if so, there is no evidence that 'depictions of animal

cruelty" is among them.'"  *Stevens,* 559 US at 472, 130 S.Ct. at 1586.

      In finding depictions of animal cruelty among the vast category of protected

speech, Justice Roberts pointed back to *Free Speech Coalition,* (noting that

distribution and sale "were intrinsically related to the sexual abuse of children,"

giving the speech at issue "a proximate link to the crime from which it came"

(internal quotation marks omitted)).  *Stevens,* 559 US at 471, 130 S.Ct. at 1586.

The important constitutional distinction the Court explained between child

pornograhy and simulated pornography in *Free Speech Coalition* is also

21

controlling in the disposition of the instant issue.  First the majority's author,

Justice Kennedy explained that child pornography was granted status in *Ferber* as

an unprotected category because there is a link between the depiction of child

porongraphy and the creation of a permanent record that can be circulated in new

publications indefinitely.  "The most expeditious if not the only practical method

of law enforcement may be to dry up the market for this material by imposing

severe criminal penalties on persons selling, advertising, or otherwise promoting

the product."  Under either rationale, the speech had what the Court in effect held

was a proximate link to the crime from which it came."  *Free Speech Coalition,*

535 US at 249-250, 122 S.Ct at 1401.

    The five factors the *Ferber* court relied on for rationale are summarized and

set out near the beginning of the instant argument.   In fact, all five of the *Ferber*

decision's reasons for declaring child pornagraphy an unprotected category of

speech refer specifically to "children", not "minors", and the first three of the five

reasons point specifically to the distribution of "child" pornography.  *Ferber,* 458

U.S. at 756-765, 102 S.Ct. at 3354-3358.   The *Ferber* decision did not provide a

"carveout" that exempts Section 2251(a) from a constitutional analysis that begins

with the presumption that the statute violates the free speech protection of the First

Amendment.  The state statute under review in *Ferber* defined a child as a person

22

under 16 years of age.  The Code of Iowa at Section 702.5, defines a "child" as a person under the age of 14.  The *Ferber* court does not define the age of a "child", but the opinion was written in the context of children under the age of 16.  In reference to the statute at issue in the instant case, Congress defined "child pornography" as a visual depiction of a "minor" engaged in sexually explicit conduct, which includes masturbation.  A minor is defined as a person under the age of 18.  18 USC 2254(1)(2B) and (8).   The *Ferber* decision did not specify that age classification and did not carve out an exclusion from free speech protection for images of persons 16 and 17 years old.  That distinction in age groups is not a mere technicality.  As pointed out, persons in Iowa who are 16 or 17 years of age are legally permitted to engage in sex acts with persons 16 years of age or older. In Illinois, persons who are 17 years of age are legally permitted to engage in sex acts with persons who are 17 years old or older.  Throughout the nation, 16 and 17-year-olds are granted legal permission to engage in sexual intercourse and other sex acts with persons their own age or older. Under 18 USC 2243(a), a person 16 years of age or older may legally engage in sex acts with an adult. The *Free Speech Coalition* opinion noted that federal age of consent while assailing the inclusion of 16 and 17-year-olds in the Act. "Under the CPPA, images are prohibited so long as the persons appear to be under 18 years of age.  18 USC

23

2256(1).  This is higher than the legal age for marriage in many States, as well as

the age at which persons may consent to sexual relations." 535 U.S. at 246-247,

122 S.t at 1400 Consensual sexual activity of a person 16 or older cannot be

considered sexual abuse or child abuse as contemplated by *Ferber,* and depictions

of that person's consensual sexually explicit conduct cannot be considered to be

the "child pornography" that *Ferber* held was not protected by the First

Amendment.   How can the receipt of the depicted subjects' voluntary,  private

phone video transmissions from these 16 and 17 year-olds engaging in sexual

conduct punish a person like Mr. Fredrickson with 200 months imprisonment in a

federal prison without infringing on the free speech and expression rights of the

sender and the receiver?  If the complaining witness in the instant case had asked

another minor to assist her in recording the video, the complaining witness herself

would have been in violation of 2251(a).

The reasoning of Justice Burke in his dissent in the *Hollins* case bears

repeating.  Justice Burke concluded that after *Stevens* there was no First

Amendment exemption for some broadly defined concept of child pornography.

"Or to put it another way, for a photograph to be child pornography in the federal

constitutional sense, and thus be exempted from first amendment protection, the

photograph must be 'an integral part of conduct in violation of a valid criminal

statute.'" *Hollins,* 971 NE 2d at 520.  The photographic depiction of the 17-year-

old young woman engaged in intercouse with an older man in *Hollins*

was not a depiction of conduct "in violation of a valid criminal statute."  Just as

the ban on simulated child abuse was not supported by *Ferber,* the punishment for

the receipt of a sixteen-year-old's self-made video showing herself masturbating

does not find support with *Ferber.*  The act depicted is not child abuse, and it is

not a criminal act.  The speech is protected, and the presumption that Mr.

Fredrickson's First Amendment right was violated cannot be overcome. *Free*

*Speech Coalition,* 535 US at 251-253, 122 S.Ct. at 1402-1403.


## *Analysis*

**Construction:**  "The first step in overbreadth analysis is to construe the

challenged statute; it is impossible to determine whether a statute reaches too far

without first knowing what the statute covers."  *US v. Williams*, 553 US 285, 293,

128 S.Ct. 1830, 1838 (2008)  In defining "child pornography" to include 16 and

17-year-old minors, the CPPA has criminalized the transmission of sexual

expression of those minors in videos depicting acts that are not illegal.

**Compelling Interest***:*  Because the CPPA restricts protected speech based

upon its content, it can survive the Court's scrutiny under the presumption of its

unconstitutionality only if the Government can demonstrate a compelling interest

that the statute serves, "and it must show that the CPPA is narrowly tailored to

fulfill that interest." *Free Speech Coalition v. Reno,* 198 F.3d 1083, 1091 (9th Cir.

1999)

While Congress went to great lengths to state its findings and show the need

for curtailing "child" pornography and the protection of "children" with the CPPA,

very little explanation was given for including the conduct of 16 and 17-year-olds

in the prohibitions. There is no explanation for including "minors" in the

definition of "child" pornography in Congressional Findings published in 2003,

2006 or 2008.  In the Congressional Findings of 1996 for the CPPA, the report

stated reasons for the inclusion of "minors" in the statute in just two subsections of

the twenty-five sections and subsections in the report.  In subsection **11(A)**, the

Findings said "the sexualization and eroticization of minors through any form of

child pornographic images has a deleterious effect on all children by encouraging

a societal perception of children as sexual objects and behaviour leading to further

sexual abuse and exploitation of children".  This explanation suggests an effect

that recorded images might have upon adults on a "societal" level, rather than any

harm to a "minor" who engages in the sexual behaviour in the video.  The report

then warns of another broad-based social ill that must be avoided.  In subsection

26

**11(B)**, the Findings state "this sexualization and eroticization of minors creates an unwholesome environment which affects the psychological, mental and emotional development of children and undermines the efforts of parents and families to encourage the sound mental, moral, and emotional development of children".

Aside from the clear intent to legislate morals, these foregoing subsections from the legislative Findings also put forth reasons for limiting speech that were struck down in principle in the *Free Speech Coalition* and *Stevens* cases.

***Market Deterrence:*** The legislative intent in 11(A) appears to claim that "the sexualization and eroticization of minors", aged 16 and 17, will foster a "sexual object" view of "children" that will lead to sexual abuse and exploitation of children under the age of 16. This is extremely similar to arguments the Government made in *Free Speech Coalition*. That claim was that the proliferation of images of virtual children in virtual sex acts would lead to more production of actual children in the creation of pornography. In addition, the Government will have difficulty distinguishing actual children from virtual children unless both types of pornography are prohibited, so the virtual activity will lead to more actual child sexual abuse. These "market deterrence" arguments were flatly rejected by the Court. "The Government may not suppress lawful speech as the means to suppress unlawful speech. Protected speech does not become unprotected merely

because it resembles the latter. The Constitution requires the reverse …"
Concerns about how the production of virtual pornography might affect the
production of actual child photography did not justify the suppression of protected
speech.  "'[T]he possible harm to society in permitting some unprotected speech to
go unpunished is outweighed by the possibility that protected speech of others
may be muted ....'  (Cite)  The overbreadth doctrine prohibits the Government
from banning unprotected speech if a substantial amount of protected speech is
prohibited or chilled in the process." *Free Speech Coalition,* 535 US at 255.

*Cost - Benefit Analysis:*  Of course, the legislative conclusions stated in
subsection 11(B) of the 1996 Congressional Findings are even more generalized
and attenuated from protected free speech than those in 11(A).  In 11(B), the
Congress said the sexual and erotic images of "minors" would lead to a kind of
moral decay, or "unwholesome environment" that would affect the psychological
and emotional development of "children" and thwart parents and families trying to
"encourage the sound mental, moral, and emotional development of *children.*"
(emphasis added)  The *Stevens* court rejected this type of test for balancing of
values.  The Government claimed that the animal crush videos should fall into a
"First Amendment Free" zone.  Their value to society is just so low when
compared to the societal values served by suppressing the speech that there should

28

simply be a categorical denial of protection for the videos.  In its brief, the

Government posited a simple balancing test:  "Whether a given category of speech

enjoys First Amendment protection depends upon a categorical balancing of the

value of the speech against its societal costs."  Justice Roberts responded for the 8-

1 majority:

> As a free-floating test for First Amendment
> coverage, that sentence is startling and dangerous. The
> First Amendment's guarantee of free speech does not
> extend only to categories of speech that survive an ad
> hoc balancing of relative social costs and benefits. The
> First Amendment itself reflects a judgment by the
> American people that the benefits of its restrictions on
> the Government outweigh the costs. Our Constitution
> forecloses any attempt to revise that judgment simply on
> the basis that some speech is not worth it. The
> Constitution is not a document "prescribing limits, and
> declaring that those limits may be passed at pleasure."
> *Marbury v. Madison,*  1 Cranch 137, 178, 2 L. Ed. 2d 60
> (1803)
>
> *Stevens,* 559 US at 470, 130 S. Ct. 1585.

By the same token, the Finding in the congressional report at subsection

11(B) determines the value of the depiction of minors in sexually explicit and

erotic videos or films is outweighed by a societal need to establish and assist

families with instilling " the sound mental, moral, and emotional development of

children."  In fact, the *Free Speech Coalition* court specifically emphasized the

artistic value that adults find in the sexually explicit images of teenagers.  The Court pointed to films nominated for the Oscar for Best Picture two years in a row in 2000 and 2001, wherein scenes depicted teenagers engaged in sex acts.  That was four and five years after enactment of the CPPA.  Specifically, in the movie *Traffic,* a scene shows a girl identified as a 16-year-old engaged in trading her participation in a sex act for drugs.  The Court said: "[*Ferber*] reaffirmed that where the speech is neither obscene nor the product of sexual abuse, it does not fall outside the protection of the First Amendment."  Suppression of protected speech is not a permitted method for protecting children.  "The Government, of course, may punish adults who provide unsuitable materials to children, (Cite) and it may enforce criminal penalties for unlawful solicitation. The precedents establish, however, that speech within the rights of adults to hear may not be silenced completely in an attempt to shield children from it." *Free Speech Coalition,* 535 US at 247-248, 251-252, 122 S.Ct. at 1400, 1402.

There is no compelling governmental interest that permits the infringement of Mr. Fredrickson's free speech.

## CONCLUSION

The videos that the complaining witness created and sent to Mr. Fredrickson in the instant case did not meet the definition of obscenity and they did not depict

30

a criminal act. As such, the communications and images expressed in the videos were protected speech under the First Amendment.  Section 2251(a) is unconstitutional for overbreadth. The prosecution and imprisonment of Mr. Fredrickson violated his First Amendment right, and the action must be reversed with a remand directing dismissal.

/s/ Murray W. Bell
Murray W. Bell P.C.
2435 Kimberly Road Suite 235 South
Bettendorf, IA. 52722
Phone: (563) 326-4095
Facsimile: (563) 594-5180
E-mail: mwbell@kirkwoodlaw.com

## CERTIFICATE OF COMPLIANCE WITH RULE 30

The undersigned hereby certifies that the attached brief complies with the type and Volume limitations of Federal Rule of Appellate Procedure 32(a)(7) and Seventh Circuit Rule 28A(c). The brief used a proportional type face, 14 point Times New Roman based on WordPerfect Version 11, the brief contains 6985 words, excluding the table of contents, table of authorities and any addendum and certificates of counsel.

s/ Murray W. Bell

## CERTIFICATE OF FILING AND SERVICE

I certify that on the 11th day of September, 2020 I electronically filed the foregoing brief and accompanying Small Appendix with the Clerk of Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. The brief was scanned for viruses.

I hereby also certify that on the 11th day of September, 2020 I served a copy of this Motion upon the Appellant, Timothy Brandon Fredrickson, by mailing a copy by first class mail postage prepaid to Timothy Brandon Fredrickson at the Mercer County Jail, Aledo, Illinois

/s/ Murray W. Bell
Murray W. Bell P.C.
2435 Kimberly Road Suite 235 South
Bettendorf, IA. 52722
Phone: (563) 326-4095
Facsimile: (563) 594-5180
E-mail: mwbell@kirkwoodlaw.com

NO. 20-2051
_____

UNITED STATES COURT OF APPEALS THE
SEVENTH CIRCUIT

_____

UNITED STATES OF AMERICA
              Plaintiff-Appellee

    v.

TIMOTHY BRANDON FREDRICKSON,
          Defendant-Appellant.

_____

Appeal from the United States District Court
for the Central District of Illinois, Rock Island, Illinois
Case No.  17-cr-40032
The Honorable Judge Michael M. Mihm, Presiding

_____

**DEFENDANT-APPELLANT'S REQUIRED APPENDIX**
**DEFENDANT-TIMOTHY FREDRICKSON**

_____

Murray W. Bell, P.C.
2435 Kimberly Road, Suite 235 South
Bettendorf, Iowa 52722
563-326-4095
fax 563-594-5780
mwbell@kirkwoodlaw.com


**ORAL ARGUMENT REQUESTED**

## APPENDIX TABLE OF CONTENTS

Certificate of Compliance...............................................................................Ap.   ii

Notice of Filing and Service ..................................................................Ap.  iii

Relevant Docket Entries ........................................................................Ap.  iv

Indictment....................................................................................................Ap.001

Defendant's Motion to Dismiss on Constitutional Grounds .......................Ap. 003

Government's Response to Motion to Dismiss on Constitutional Grounds..Ap. 005

Portion of Motion Hearing Transcript with Ruling......................................Ap. 011

Judgment in a Criminal Case.......................................................................Ap. 020

## Relevant Docket Entries

Indictment  (R. 13)  (03/32/17)

Defendant' Motion to Dismiss on Constitutional Grounds (R. 142) (1/07/20)

Government's Response to Motion (R. 146) (6/5/20)

Judgment in a Criminal Case (R. 183) (06/05/20)

Notice of Appeal (R. 188) (6/18/20)

**CERTIFICATE OF COMPLIANCE WITH CIRCUIT RULE 30**

The undersigned counsel for the Defendant Appellant hereby certifies that

all of the material required by Circuit Rules 30(a) and 30(b) are included in this

Appendix to the Brief.

Murray W. Bell, P.C.

By:   /S/ Murray W. Bell
       Murray W. Bell, P.C.
       2425 Kimberly Road
       Suite 235 South
       Bettendorf, IA 52722

Dated this 11th day of September 2020

## NOTICE OF FILING AND PROOF OF SERVICE

TO:   Mr. Gino Agnello, Clerk, United States Court of Appeals, 219 South
      Dearborn Street, Chicago, Illinois 60604

      Mr. Timothy Fredrickson, % Mercer County, Illinois Jail, 906 SW 3rd Street,
      Aledo IL 61231-1800

      Ms. Jennifer L. Mathew, Office of the united States Attorney, 1830 2nd Avenue,
      Rock Island, IL 61201-8003

      PLEASE TAKE NOTICE that on the 11th day of September 2020, the undersigned
attorney electronically filed the foregoing brief and required appendix with the Clerk of Court
for the United States Court of appeals for the Seventh Circuit by using the CM/ECF system.

      I also certify that on the 11th day of September 2020, the undersigned attorney served a
copy of the Brief and Appendix via U.S. Mail, to the Appellant-Defendant, Mr. Timothy
Fredrickson  %Mercer County, Illinois Jail, 906 SW 3rd Street, Aledo IL 61231-1800.

                                        Murray W. Bell, P.C.

                              By:    /S/ Murray W. Bell
                                     Murray W. Bell, P.C.
                                     2425 Kimberly Road
                                     Suite 235 South
                                     Bettendorf, IA 52722

E-FILED

Wednesday, 22 March, 2017  09:59:32 AM
Clerk, U.S. District Court, ILCD

- 1 -

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## AT ROCK ISLAND

FILED

MAR 2 1 2017

CLERK OF COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal No. 17-cr-40032 |
| | ) | |
| v. | ) | |
| | ) | VIO:  Title 18, United States Code, |
| TIMOTHY BRANDON FREDRICKSON, | ) | Sections 2251(a) & (e); and 2253 |
| | ) | |
| Defendant. | ) | |

## INDICTMENT

**THE GRAND JURY CHARGES:**

### COUNT ONE
### (SEXUAL EXPLOITATION OF A CHILD)

From on or about January 7, 2017, through on or about February 1, 2017, in Rock Island County, in the Central District of Illinois, and elsewhere, the defendant,

### TIMOTHY BRANDON FREDRICKSON,

did employ, use, persuade, induce, entice, and coerce a minor, that is, a sixteen-year-old girl, to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct, where such visual depictions were produced using materials that had been shipped and transported in interstate and foreign commerce, and the defendant knew or had reason to know that said visual depictions would be transmitted using any means and facility of interstate and foreign commerce.

All in violation of Title 18, United States Code, Sections 2251(a) and (e).

- 2 -

## FORFEITURE ALLEGATIONS

The allegations contained in Count One this Indictment are hereby realleged and incorporated herein by reference for the purpose of alleging forfeitures pursuant to the provisions of Title 18, United States Code, Section 2253.

From his engagement in the offense alleged in Count One of this Indictment, the defendant,

### TIMOTHY BRANDON FREDRICKSON

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 2253, all interest in:

1.    Any visual depiction or other matter containing such visual depiction which was possessed as alleged above in this Indictment; and

2.    Any personal property used or intended to be used to commit or promote the commission of the offense charged above in this Indictment.

The property referred to above as items 1 and 2 includes, but is not limited to, the following:

- LG G5 cellphone

- HP P6000 desktop with S/N 3CR0320KHJ

A TRUE BILL
s/ Foreperson

FOREPERSON

s/ Meredith DeCarlo

PATRICK D. HANSEN
ACTING UNITED STATES ATTORNEY
MRWD

**Appendix page No. 002**

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>vs.<br><br>TIMOTHY BRANDON  FREDRICKSON,<br><br>       Defendant. | Criminal Case No. 17-cr-40032<br><br><br>DEFENDANT'S MOTION TO DISMISS ON<br>CONSTITUTIONAL GROUNDS |

In support of the Motion to Dismiss, Defendant states:

1.  Mr. Frederickson is charged by Indictment with Sexual Exploitation of a Child under 18 USC

2251(a).  The statute does not prohibit conduct with a "child", but rather conduct with a "minor".  It

prohibits the inducement to create images of sexually explicit conduct that the Defendant knows will be

transmitted using means of interstate commerce.  In 2017, Defendant had developed a relationship with a

sixteen year-old girl.  He is accused of asking the girl to send him photographic and video images that

included images of the girl engaging in sexually explicit conduct while alone.  The term "sexually explicit

conduct" is defined by 18 USC 2256(1).  The girl sent the images to Mr. Fredrickson via cell phone. The

girl lived in Moline, Illinois, and Defendant lived in Davenport, Iowa at the time.  If Mr. Fredrickson and

the girl had met in person in either state, it would not have been illegal for Defendant to watch the girl

engage in the sexually explicit conduct recorded in the images, or to use his phone or a camera to record

her activity.  There is no evidence that either of the two people involved intended to share the images with anyone else.

2.  Section 2251(a) is overly broad in prohibiting expression and communication of legal sexually explicit conduct.  The statute violates the First Amendment rights of the girl and the Defendant to direct, produce and communicate sexual expressions in photo and videographic forms.  The images do not record sexual abuse, and are not exempted from constitutional protection as child pornography.  Congress could have easily provided less restrictive alternatives in the legislation by prohibiting the transmission of images of conduct that in itself was a violation of a valid criminal statute.


WHEREFORE, because the statute is overly broad in violation of the First Amendment, the Indictment must be dismissed.


__/s/  Murray W. Bell__

2435 Kimberly Road
Suite 235 South
Bettendorf, IA 52722
(563) 326-4095
mwbell@kirkwoodlaw.com

Attorney for Defendant

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## AT ROCK ISLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Criminal No. 17-cr-40032** |
| | ) | |
| **v.** | ) | |
| | ) | |
| | ) | |
| **TIMOTHY FREDRICKSON** | ) | |
| | ) | |
| **Defendant.** | ) | |

### GOVERNMENT'S RESPONSE TO DEFENDANT'S
### MOTION TO DISMISS ON CONSTITUTIONAL GROUNDS

The United States of America, by and through the undersigned Assistant United States Attorney, hereby responds to defendant's motion and memorandum in support of his motion to dismiss, [142].

Defendant's motion should be denied. His behavior as alleged in the sole count of the indictment is not only illegal under federal law but also under both Illinois and Iowa state law. Child pornography is not a protected expression of speech, and is appropriately subject to regulation.

### I. Background

Defendant Timothy Brandon Fredrickson is charged with one count of sexual exploitation of a minor, in violation of 18 U.S.C. § 2251(a). That charge stems from conversations defendant had with a minor girl, S.B., on a number of online applications, including Whisper and SnapChat. Defendant first made contact with his minor victim over the Whisper application. They soon moved their communications to SnapChat. Over

1

SnapChat, defendant solicited and received sexually explicit material from his minor victim. Unbeknownst to S.B., defendant also used the program AZ Screen Recorder to record MP4 video files that functionally "preserved" their communications over SnapChat, including the sexually explicit material he solicited. Defendant asserts two arguments 1) 18 U.S.C. § 2251(a) is overly broad; and 2) under state law the defendant could have legally viewed and recorded the victim engaging in sexual conduct. Both arguments are substantively deficient and incorrect.

## II. Argument

The government has a long recognized compelling interest in preventing the sexual exploitation and abuse of children. *See New York v. Ferber*, 458 U.S. 747 (1982). "The distribution of child pornography is 'intrinsically related' to the sexual abuse of children because it creates a 'permanent record of the children's participation and the harm to the child is exacerbated by [its] circulation,' and the production of pornography requiring the sexual exploitation of children cannot be 'effectively controlled' unless that network is closed." *United States v. Bach*, 400 F.3d 622, 631 (8th Cir. 2005) (citing *Ferber*, 485 U.S. at 759).

### A.  The Age of Consent Does Not Negate the Exploitation of Children Caused by the Production of Child Pornography

Defendant argues that had he could have lawfully engaged in consensual sexual relations with S.B. because S.B. was sixteen and under Iowa law, the age of consent is sixteen. IA ST § 709.4. The relevant definition of a minor under 18 U.S.C. § 2256 is "any

2

**Appendix page No. 006**

person under the age of eighteen." The age of consent in Iowa is irrelevant to the nature and circumstances of the behavior that Defendant is alleged to have engaged in, in that he "did employ, use, persuade, induce, entice, and coerce a minor, that is a sixteen-year-old girl, to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct." [13]. Defendant is not alleged to have engaged in consensual sexual relations with S.B., rather he solicited sexually explicit videos of her over Snapchat and then preserved visual depictions of her sexually explicit conduct using a separate application. While the First Amendment offers broad protections over free speech, not all speech qualifies. Defendant's conduct, the creation of child pornography, is exactly what the Court in *Ferber* concerned itself with, in finding that the broad protections of the First Amendment do not apply in this instance.

Defendant attempts to liken his behavior to the "virtual child pornography" that was the subject of the Court's analysis in *Ashcroft v. Free Speech Coalition.* 535 U.S. 234 (2002) In *Ashcroft*, the images at issue did not involve real children in the production process. Those are not the facts of this case. The videos created here, at the behest of this Defendant, have an identifiable child victim of sexual exploitation. While engaging in consensual sexual activity would be permissible under Iowa law, the Defendant caused the creation and memorialization of S.B.'s sexual conduct and "like a defamatory statement, each new publication . . . would cause new injury to the child's reputation and emotional well-being." *Ashcroft v. Free Speech Coalition*, 535 U.S. at 249 (2002). It is this memorialization and re-victimization of a real victim, which is at the center of the Court's analysis in *Ashcroft*.

3

**Appendix page No. 007**

Defendant cites *Stevens* for the premise that child pornography as a category should be examined under the First Amendment with the same analysis used to examine animal cruelty. The protections offered under the First Amendment are broad but they are not absolute and as such, Defendant's reliance on *Stevens* is ill placed. *Stevens* examines the First Amendment implications that arise when prosecuting individuals for animal cruelty. In its opinion, the Court distinguishes the First Amendment analysis of a historically unprotected category, such as animal cruelty, from "categories of speech . . . fully outside the protection of the First Amendment," specifically citing child pornography as an example in the latter category. *United States v. Stevens*, 559 U.S. 460, 471 (2010).

## B. Defendant's Behavior is Illegal in Both Iowa and Illinois

Defendant's repeated assertions, without authority, that under state law he would have been able to legally record S.B. engaging in sexually explicit conduct is completely irrelevant to the his pending federal charge and is also in direct contradiction to both Iowa and Illinois law. The state of Illinois criminalizes persons who "solicit, use, persuade, induce, entice, or coerce any child whom he or she knows or reasonably should know to be under the age of 18 . . . to appear in . . . a depiction by computer, in which the child . . . would be depicted actually or by simulation engaged in an act of masturbation." 720 ILCS 5/11-20.1(a)(4). Similarly, the State of Iowa criminalizes persons

> [W]ho employ, use, persuade, induce, entice, coerce, solicit, knowingly permit, or otherwise cause or attempt to cause a minor to engage in a prohibited sexual act or in the simulation

4

**Appendix page No. 008**

of a prohibited sexual act. A person must know, or have reason
to know, or intend that the act or simulated act may be
photographed, filmed, or otherwise preserved in a visual
depiction.

IA ST § 728.12.

Here, Defendant employed, persuaded, used, and induced, S.B., a minor, to record herself

engaging in the requested sex acts. Defendant's behavior is clearly prohibited under both

states' and federal statute.

**IV. Conclusion**

Defendant's suggestion that his solicitation of a sixteen-year-old girl to engage in

sexually explicit conduct for the purpose of producing visual depictions of such conduct is

worthy of First Amendment protection is squarely at odds with established law. His

behavior is not protected under the First Amendment and § 18 U.S.C. 2251(a) is not overly

broad in its restrictions. Defendant's conduct is intrinsically related to child sex abuse and

the causal connection is direct; the harm follows from the speech.

WHEREFORE, the United States of America respectfully requests that the Court deny

the defendant's motion and memorandum in support of his motion to dismiss, [142].

> Respectfully submitted,
> JOHN C. MILHISER
> United States Attorney
>
> By:    _/s/ Jennifer L. Mathew_
> Assistant United States Attorney
> 1830 – 2nd Avenue, Suite 250
> Rock Island  IL 61201
> Telephone: (309) 793-5884

5

**Appendix page No. 009**

## CERTIFICATE OF SERVICE

I hereby certify that on January 15, 2020, I electronically filed the foregoing

materials with the Clerk of the Court using the CM/ECF system, which will send

notification of such filing to all CM/ECF participant(s) in the case.


 */s/ Jennifer L. Mathew*
Assistant United States Attorney

**Appendix page No. 010**

```
 1              UNITED STATES DISTRICT COURT

 2              CENTRAL DISTRICT OF ILLINOIS

 3
    UNITED STATES OF AMERICA,         )
 4                                    )
              Plaintiff,              )
 5                                    )  Criminal No. 4:17-40032
         vs.                          )
 6                                    )
    TIMOTHY BRANDON FREDRICKSON,       )
 7                                    )
              Defendant.              )
 8

 9              TRANSCRIPT OF PROCEEDINGS
         BEFORE THE HONORABLE MICHAEL M. MIHM
10             TELEPHONIC MOTION HEARING
            JANUARY 17, 2020; 9:03 A.M.
11                PEORIA, ILLINOIS

12  APPEARANCES:

13  For the Government:     DONALD B. ALLEGRO, ESQUIRE
                            JENNIFER L. MATHEW, ESQUIRE
14                          Asst. United States Attorneys
                            1830 2nd Avenue
15                          Rock Island, Illinois 61201
                            (309) 793-5880
16
    For the Defendant:      MURRAY W. BELL, ESQUIRE
17                          Murray W. Bell, P.C.
                            2435 Kimberly Road, Suite 235 South
18                          Bettendorf, Iowa 52722
                            (563) 326-4095
19
                            DONOVAN S. ROBERTSON, ESQUIRE
20                          Coyle Stengel Bailey & Robertson
                            100 17th Street, Suite 405
21                          Rock Island, Illinois 61201
                            (309) 788-0471
22

23          Jennifer E. Johnson, CSR, RMR, CRR
               U.S. District Court Reporter
24             Central District of Illinois

25  Proceedings recorded by mechanical stenography;
    transcript produced by computer
```

1    THE CLERK:  Okay, Judge, everyone's on the

2  line.

3    THE COURT:  All right.  Thank you.

4    I understand Timothy Fredrickson is on the

5  line.

6    This is the case of the *United States of*

7  *America vs. Timothy Fredrickson*, 17-40032.

8    Representing Mr. Fredrickson, Donovan

9  Robertson and Murray Bell.  And for the United

10  States, Don Allegro and Jennifer Mathew.

11    The purpose for the phone hearing this morning

12  is for the Court to consider two motions that have

13  been recently filed.  One is the defendant's motion

14  to dismiss on constitutional grounds.  The other is

15  a motion to dismiss claiming a violation of the

16  Speedy Trial Act.

17    I'd like to consider the defendant's motion to

18  dismiss on constitutional grounds first.  And I

19  will state, for the record, that I have read all

20  the pleadings that have been filed, but go ahead

21  and highlight your arguments if you would.

22    Mr. Robertson or Mr. Bell?

23    MR. BELL:  Your Honor, this is Mr. Bell.  With

24  the Court's permission, I will argue the case.

25    THE COURT:  Okay.  Can you keep your voice up

1  a little louder, please?

2      MR. BELL:  You bet I can.

3      Your Honor, the position is as stated, that

4  this is an unconstitutional limitation of Mr. -- of

5  the First Amendment rights to free speech.  And for

6  the history of these kind of cases and the Supreme

7  Court's ruling on them, which started in 1982 with

8  *New York vs. Ferber*, that was a case of child

9  abuse, and in that case, the court was concerned

10  about innocent children being abused for the

11  purpose of making video or -- yeah, video or

12  photographic images.

13      The interesting -- the interest the court

14  addressed mostly was the market for children's --

15  child pornography is intrinsically related to the

16  underlying abuse and was, therefore, an integral

17  part of the production of such material, an

18  activity illegal throughout the United States.  It

19  found that basically we were videotaping illegal

20  behavior, and that was the basis -- a part of, a

21  major part of the basis for the exclusion -- for

22  upholding the law that forbid that.

23      You then move ten years down to *Ashcroft vs.*

24  *Free Speech Coalition*, and this is a different kind

25  of case because this deals with virtual children as

1  opposed to real children, but engaging in the same

2  sort of behavior.  Now, here the court ruled that

3  they couldn't limit that activity because it wasn't

4  a video recording of an illegal activity or abuse

5  of a child.  It was an artistic behavior, and it

6  was an expression, and so they did -- the court did

7  not find that the government could prohibit the

8  underlying activity or the video-recording of it.

9       And then you move, of course, to *United States*

10  *vs. Stevens* which was in 2010.  This is an animal

11  cruelty case.  The issue in the case was the state

12  really -- or the government was really shooting at

13  the -- what they call crush videos.  This is videos

14  of, apparently, women crushing small animals,

15  stomping them, killing them, making them squeal.

16  And Justice Roberts wrote the opinion which -- in

17  the case and focused on the fact that, among other

18  things, the law as passed -- and it was Title 18

19  USC Section 48.  The law that was passed

20  illegalized virtually any behavior, including

21  killing animals.  And it -- even though the statute

22  required that the activity be illegal, it didn't --

23  it was a problem because the state laws throughout

24  the states are different on what constitutes

25  illegality.

1      The court was concerned that it essentially
2   allowed one state to transport or export its
3   statutes into another state.  And they pointed out
4   that while not requiring cruelty, Section 48 did
5   require that the depicted conduct be illegal.

6      Now, then the court pointed out there are many
7   federal and state laws concerning the proper
8   treatment of animals, but many of them are not
9   designed to guard against animal cruelty.  And it
10  points out hunting out of season for deer might
11  constitute a crime and make a video of it illegal.
12  The problem you have, of course, is all the hunting
13  magazines and all the hunting shows on TV and all
14  of that may or may not engage in illegal behavior.
15  The court said specifically because the statute
16  allows each jurisdiction to export its laws to the
17  rest of the country, it extends to any magazine or
18  video depicting lawful hunting so long as the
19  depiction sold -- this was a Washington, D.C.,
20  case.  So, if the magazine was sold in Washington,
21  D.C., or the video show was shown in Washington,
22  D.C., you have a problem.

23      Interestingly enough, I think inadvertently
24  the government actually pointed out that there's a
25  problem with its case.  The government's brief

1  talks about the behavior being of a sexually

2  explicit manner, which is actually the behavior of

3  a 16-year-old masturbating, and the government

4  claims that's a videotape that is illegal in both

5  the state of Iowa and the state of Illinois.  And I

6  beg to differ.  I've practiced in the state of Iowa

7  for 30 years, and I've never seen a statute in Iowa

8  that says masturbation is illegal.  I will skip all

9  the jokes you can say about that, but illegalizing

10  masturbation is really problematic.  The problem

11  is, it's not illegal in Iowa, and it's not illegal

12  to video it in Iowa.

13      If one reads the bottom of page four of the

14  government's brief, you'll see that it is illegal

15  because masturbation is specifically prohibited in

16  Illinois -- or videoing masturbation of someone

17  under 18.  But when you read the Iowa statute, it

18  says "who employ, use, persuade, induce, entice,

19  coerce, solicit, knowingly permit, or otherwise

20  cause or attempt to cause a minor to engage in a

21  prohibited sexual act."

22      Well, masturbation is not prohibited in Iowa;

23  therefore, the recording of this in Iowa would not

24  be illegal.

25      So, our position is that it's an

1  unconstitutional limitation on freedom of speech,

2  and, therefore, the case should be dismissed.

3      THE COURT:  All right.  Thank you.

4      Who's going to respond?

5      MS. MATHEW:  Your Honor, this is Jennifer

6  Mathew.

7      THE COURT:  Okay.

8      MS. MATHEW:  I'll be arguing the government's

9  response in this matter.

10      THE COURT:  Thank you.

11      MS. MATHEW:  Your Honor, the courts are pretty

12  clear throughout, ever since the *Ferber* decision,

13  that child pornography and child exploitation is

14  prohibited and is not permissible under the First

15  Amendment.

16      Mr. Bell refers to the kind of -- the history

17  of this case law from *Ferber* to *Ashcroft*, from

18  *Ashcroft* to *Stevens*, but I believe his reliance on

19  the *Stevens* case in order to make his point is

20  misguided.  The court, in the *Stevens* matter, Your

21  Honor, used the *Miller* analysis and specifically

22  referenced its prior decisions in both *Ferber* and

23  *Ashcroft* in stating that, unlike in *Ferber* and

24  *Ashcroft*, animal cruelty is a completely different

25  topic.  In *Ferber* and *Ashcroft*, the court found

```
 1  that this category -- this category of speech,
 2  child pornography and sexual exploitation of
 3  children, is a carveout and is not subject to the
 4  same analysis that the court used subsequently in
 5  the Stevens decision.
 6      In the Ashcroft case, Judge, the conversation
 7  is about virtual child pornography, and the court
 8  in that analysis was looking at virtual child
 9  pornography because there are no victims in
10  virtual.  It's virtual; there aren't real people.
11  There aren't real people who now have to suffer the
12  repercussions of these images and videos being
13  memorialized.
14      Those aren't the facts of this case.  In this
15  case, we have a real victim.  She is not virtual.
16  The defendant solicited these specific depictions
17  from her and then preserved those depictions.  His
18  behavior does not fall within the First Amendment.
19  It is not protected behavior.  There is a real
20  victim who suffered real harm from his conduct, and
21  because of that, we believe that the defendant's
22  motion to dismiss based on the First Amendment
23  should be denied.
24      THE COURT:  All right.  Thank you.
25      THE DEFENDANT:  Your Honor, if I may?
```

```
 1        THE COURT:  Yes.

 2        THE DEFENDANT:  Counsel's argument is, I

 3   believe, to be very strong --

 4        THE COURT:  I'm sorry, hold on.  Who's

 5   talking?

 6        THE DEFENDANT:  Like the statute --

 7        THE COURT:  I'm sorry?

 8        MR. BELL:  Tim, Tim, you're not arguing.

 9   Remain silent.

10        THE COURT:  Yes.  All right.

11        Well, with all due respect to Defense Counsel,

12   I believe it's clear that there is a carveout for

13   child pornography to protect children under the age

14   of 18.  We're not talking about a virtual situation

15   here, and I -- the motion to dismiss is denied.

16        Now, the other motion is on the Speedy Trial

17   grounds.  Who's going to argue that for the

18   defense?

19        MR. BELL:  This is Murray Bell.  I will argue

20   that one also.

21        THE COURT:  Yes.  Let me ask you, Mr. Bell, I

22   note in your pleading you reference the transcripts

23   from the various hearings.  I took the time to look

24   at those, and I could be mistaken, but I believe in

25   each and every one of those the Court made a
```

4:17-cr-40032-MMM    # 183    Page 1 of 6
Case: 20-2051    Document: 13-2    Filed: 09/23/2020    Pages: 67

E-FILED
(62 of 67)
Friday, 05 June, 2020 02:38:31 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT

Central District of Illinois

| | |
|---|---|
| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE** |
| **v.** | |
| Timothy Brandon Fredrickson | Case Number:  17-CR-40032-001 |
| | USM Number:  22005-026 |
| | Murray W. Bell |
| | Defendant's Attorney |

## THE DEFENDANT:

☐ pleaded guilty to count(s) _____

☐ pleaded nolo contendere to count(s) _____
   which was accepted by the court.

☑ was found guilty on count(s)    1
   after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. § 2251(a) and § 2251(e) | Sexual Exploitation of a Child | 2/1/2017 | 1 |
| | | | |

The defendant is sentenced as provided in pages 2 through ____6____ of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☐ Count(s) _____  ☐ is  ☐ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

6/4/2020
Date of Imposition of Judgment

s/Michael M. Mihm

Signature of Judge

Michael M. Mihm    U.S. District Judge
Name and Title of Judge

6/5/2020
Date

**Appendix page No. 020**

AO 245B (Rev. 09/17)  Judgment in Criminal Case
Sheet 2 — Imprisonment

Judgment — Page __2__ of __6__

DEFENDANT:  Timothy Brandon Fredrickson
CASE NUMBER:  17-CR-40032-001

## IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of:

200 Months

☑  The court makes the following recommendations to the Bureau of Prisons:

It is recommended that the defendant serve his sentence in a facility as close to his family in Galva, Illinois, as possible, specifically, FCI Pekin or FCI Oxford.

☑  The defendant is remanded to the custody of the United States Marshal.

☐  The defendant shall surrender to the United States Marshal for this district:

　　☐  at _____  ☐ a.m.  ☐ p.m.  on _____ .

　　☐  as notified by the United States Marshal.

☐  The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

　　☐  before 2 p.m. on _____ .

　　☐  as notified by the United States Marshal.

　　☐  as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

at _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

**Appendix page No. 021**

AO 245B (Rev. 09/17)   Judgment in a Criminal Case
Sheet 3 — Supervised Release

Judgment—Page ___3___ of ___6___

DEFENDANT:  Timothy Brandon Fredrickson
CASE NUMBER:  17-CR-40032-001

# SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of :

   10 years

        The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

1.   You must not commit another federal, state or local crime.

2.   You must not unlawfully possess a controlled substance.

3.   You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

          ☐  The above drug testing condition is suspended, based on the court's determination that you
              pose a low risk of future substance abuse. *(check if applicable)*

4.   ☑  You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*

5.   ☑  You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*

6.   ☑  You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*

7.   ☐  You must participate in an approved program for domestic violence. *(check if applicable)*

        If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

        The defendant must comply with the following conditions:

   1. The defendant shall not knowingly leave the federal judicial district without the permission of the court or probation officer.

   2. The defendant shall report to the probation office in the district to which you are released within 72 hours of release from custody. The defendant shall report to the probation officer in a reasonable manner and frequency directed by the court or probation officer.

   3. The defendant shall follow the instructions of the probation officer as they relate to the defendant's conditions of supervision. Any answers the defendant gives in response to the probation officer's inquiries as they relate to the defendant's conditions of supervision must be truthful. This condition does not prevent the defendant from invoking his Fifth Amendment privilege against self-incrimination.

   4. The defendant shall notify the probation officer at least ten days prior, or as soon as knowledge is gained, to any change of residence or employment which would include both the change from one position to another as well as a change of workplace.

   5. The defendant shall permit a probation officer to visit him at home or any other reasonable location between the hours of 6 a.m. and 11 p.m., unless investigating a violation or in case of emergency. The defendant shall permit confiscation of any contraband observed in plain view of the probation officer.

   6. The defendant shall notify the probation officer within 72 hours of being arrested or questioned by a law enforcement officer.

   7. The defendant shall not knowingly meet, communicate, or otherwise interact with any person whom he knows to be a convicted felon or to be engaged in, or planning to engage in, criminal activity, unless granted permission to do so by the Court.

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

**Appendix page No. 022**

AO 245B (Rev. 09/17)   Judgment in a Criminal Case
Sheet 3A — Supervised Release

Judgment—Page ___4___ of ___6___

DEFENDANT:  Timothy Brandon Fredrickson
CASE NUMBER:  17-CR-40032-001

## ADDITIONAL SUPERVISED RELEASE TERMS

8. You shall participate in a sex offender treatment program as approved by the U.S. Probation Office. You shall abide by the rules of the treatment provider. You shall submit to physiological testing, including polygraph testing. You shall pay the costs of the treatment to the extent you are financially able to pay. The U.S. Probation Office shall determine your ability to pay and any schedule for payment, subject to the court's review upon request.

9. You shall have no contact with any female under the age of 18 except: (1) in the presence of an adult who is aware of the nature of your background and current offense, and who has been approved by the U.S. Probation Office; (2) in the course of normal commercial business; or (3) in other cases of unintentional and incidental contact.

10. You shall participate with the U.S. Probation Office's Computer and Internet Monitoring Program (CIMP) during your term of supervision. The monitoring program will start as soon as possible after your supervision term begins. You shall sign the rules of the Computer Internet and Monitoring Program and comply with the conditions of this program. During this time, you shall install filtering software on any computer you possess or use which will monitor access to websites that depict sexually explicit conduct as defined in 18 U.S.C. § 2256(2)(A) and (B). You shall allow the U.S. Probation Office unannounced access to any computer you possess or use to verify that the filtering software is functional. You shall pay the costs of the program to the extent you are financially able to pay. The U.S. Probation Office shall determine your ability to pay and any schedule for payment, subject to the court's review upon request.

11. If there is reasonable suspicion to believe that you are in violation of a condition of supervised release, you shall submit to the search of your person, automobile, and property under your control by the U.S. Probation Office. You shall also allow the U.S. Probation office to conduct periodic unannounced examinations of your computer equipment, Internet capable devices, similar electronic devices, related computer peripherals, which may include retrieval and copying of all data from your device to ensure compliance with this condition, and/or removal of such equipment for the purpose of conducting a more thorough inspection.

12. You shall participate in psychiatric services and/or a program of mental health counseling/treatment as approved by the U.S. Probation Office and shall take all prescribed medications recommended by the treatment providers. You shall pay the costs of the treatment to the extent you are financially able to pay. The U.S. Probation Office shall determine your ability to pay and any schedule for payment, subject to the court's review upon request.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature  _____   Date _____

AO 245B (Rev. 09/17)
Sheet 5 — Criminal Monetary Penalties

Judgment — Page   5   of   6

DEFENDANT: Timothy Brandon Fredrickson
CASE NUMBER: 17-CR-40032-001

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | JVTA Assessment* | Fine | Restitution |
|---|---|---|---|---|
| **TOTALS** | $ 100.00 | $ | $ | $ 3,000.00 |

☐ The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss** | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| s/ | | $3,000.00 | |
| s/redacted | | | |
| s/redacted | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| **TOTALS** | $ 0.00 | $ 3,000.00 | |

☐ Restitution amount ordered pursuant to plea agreement $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☑ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

   ☑ the interest requirement is waived for the   ☐ fine   ☑ restitution.

   ☐ the interest requirement for the   ☐ fine   ☐ restitution is modified as follows:

\* Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
\*\* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

**Appendix page No. 024**

AO 245B  (Rev. 09/17) Judgment in a Criminal Case
Sheet 6C — Schedule of Payments

Judgment — Page   6   of   6

DEFENDANT:  Timothy Brandon Fredrickson
CASE NUMBER:   17-CR-40032-001

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

A   ☑   Lump sum payment of $  3,100.00   due immediately, balance due

    ☐   not later than _____ , or
    ☑   in accordance with  ☐  C,   ☐  D,   ☐  E, or   ☑  F below; or

B   ☐   Payment to begin immediately (may be combined with   ☐ C,   ☐ D, or   ☐ F below); or

C   ☐   Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of _____ *(e.g., months or years),* to commence _____ *(e.g., 30 or 60 days)* after the date of this judgment; or

D   ☐   Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of _____ *(e.g., months or years),* to commence _____ *(e.g., 30 or 60 days)* after release from imprisonment to a term of supervision; or

E   ☐   Payment during the term of supervised release will commence within _____ *(e.g., 30 or 60 days)* after release from imprisonment.  The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F   ☑   Special instructions regarding the payment of criminal monetary penalties:

    Upon release from confinement, the defendant shall make monthly payments of at least  50  percent  of  his disposable  income  per  month  during  the  entire  term  of  supervised release or until the restitution obligation is paid in full.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐   Joint and Several

    Defendant and Co-Defendant Names and Case Numbers *(including defendant number)*, Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

☐   The defendant shall pay the cost of prosecution.

☐   The defendant shall pay the following court cost(s):

☑   The defendant shall forfeit the defendant's interest in the following property to the United States:
    The Court orders the defendant to forfeit all property listed in Count 1

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) JVTA assessment, (8) penalties, and (9) costs, including cost of prosecution and court costs.